OPINION
{¶ 1} Angela Adams appeals from a judgment of the Miami County Court of Common Pleas, which placed her six children in the permanent custody of the Miami County Children's Services Board ("MCCSB").
 {¶ 2} The MCCSB filed a complaint for dependent children in early 1999 related to James, Rodney, Roxanne, Tiffany, Dalton, and Lori Adams because the Adams family had been living in a trailer that was condemned by the Department of Health and the Miami County Building Inspector. There had also been concerns about the utilities, safety, hygiene, nutrition, financial stability, and parenting of the children. The children were placed under protective supervision by agreement with the parents in February 1999.[1]
 {¶ 3} In September 1999, MCCSB filed a motion for a formal review hearing on the basis that the Adamses had not been working on the elements of the case plan that had been put into place when the children were removed from their care. The case plan required the Adamses to complete parenting classes, participate in budgeting sessions, complete a mental health assessment, participate in Head Start activities, and obtain appropriate housing. Mr. Adams was also required to maintain employment, and Mrs. Adams was required to earn her high school graduate equivalency degree ("GED"). On September 30, 1999, the Adamses were advised by certified mail that a hearing would be held on November 3, 1999. On November 3, 1999, the Adamses requested an attorney, and the hearing was continued until November 17, 1999, at which time they still had not secured counsel. During the interim, MCCSB modified its motion to request temporary custody of the children rather than a continuation of protective supervision because of the Adamses' failure to make progress on the case plan.
 {¶ 4} In early 2000, the parties agreed to place the Adams children in the temporary custody of MCCSB, and the case plan was modified to reflect current concerns and progress. On October 4, 2000, however, MCCSB moved that the temporary custody arrangement be changed to permanent custody because the parents had failed continuously and repeatedly to remedy the conditions that had caused the children to be removed from the home. The motion cited numerous remaining problems with the premises at which the Adamses intended to live with the children, their failure to complete therapy and budgeting classes, Mr. Adams' failure to hold a job, and Mrs. Adams' failure to earn her GED. On December 20, 2000, the Adamses filed a motion to terminate the order of temporary custody. A hearing was held in early 2001.
 {¶ 5} On July 3, 2001, the trial court overruled MCCSB's motion for permanent custody and the Adamses' motion to have custody returned to them. Temporary custody was extended. The court noted that, at the time MCCSB filed its motion, the children had not yet been in the agency's custody for twelve or more months, as required by R.C. 2151.414(B)(1)(d) for a grant of permanent custody.
 {¶ 6} On October 31, 2001, MCCSB filed a second motion for permanent custody. By that time, the children had been in MCCSB's custody for twenty-three of the preceding twenty-four months. A hearing was held on January 31, 2002. The trial court found that MCCSB's concerns regarding the physical home environment had been resolved and that the Adamses had completed their psychological evaluations. The court also found, however, that they had not completed budgeting classes as required by the case plan and had canceled almost half of their visits with the children. The court further found that, during the two years that the children had been in custody, the parents had consistently failed to complete elements of their case plan or had "attempted to complete [them] at the eleventh hour." The court also noted that the Adamses had usually blamed MCCSB or some other agency for causing them to fail.
 {¶ 7} The trial court's decision discussed the children's needs at great length. It noted that five of the children "have a significant psychological diagnosis that requires continuing care and a supportive home." James suffered from an adjustment order with depression and required structure in his life and attention from his parents that they were unable to provide. Rodney, Jr. had attention deficit hyperactivity disorder, as did his brother Dalton. Dalton also suffered from obsessive-compulsive disorder. Both boys needed stability and permanance. Lori was diagnosed as a sexually abused child with adjustment disorder who could be in danger of being abused again or of abusing other children if returned to her home and who would require very close supervision. Tiffany had Post-Traumatic Stress Disorder, Oppositional Defiant Disorder, and a speech delay. She was also a "high needs child" who needed consistency and structure. Roxanne, the youngest child, was not identified to have any significant problems but had spent half of her life in foster care.
 {¶ 8} The trial court concluded that it was in the best interests of the Adams children to be placed in the permanent custody of MCCSB because of their need for a secure placement and their parents' inability to provide such a placement. In regard to Mrs. Adams in particular, the court found that her "lack of insight and reluctance to admit problems with herself and her family" demonstrated why it was not in the children's best interests to be returned to her custody and gave significant weight to the fact that the children had been identified as having special needs.
 {¶ 9} Mrs. Adams raises two assignments of error on appeal. Mr. Adams did not file an appeal.
 {¶ 10} "I. The trial court's decision is not supported by clear and convincing evidence and is against the manifest weight of the evidence."
 {¶ 11} Mrs. Adams argues that MCCSB should not have been given permanent custody of her children because the housing problems which had originally necessitated the removal of the children had been corrected and because she was not responsible for her husband's inability to maintain employment. She also questions the assessment that the children have needs that she could not address and that any of the girls had been the victim of or had engaged in any sexual misconduct. She posits that "the obvious solution" to the children's emotional and behavioral problems was the reunification of the family. She also accuses MCCSB of purposefully allowing the statutory time limit on temporary placements to run without assisting her in reunifying the family so that there would be no choice but to place the children in the permanent custody of MCCSB.
 {¶ 12} Mrs. Adams' arguments reflect the trial court's conclusions that she lacks insight and refuses to acknowledge her own problems and those of her family. Although the problems with the family trailer were eventually corrected, as she points out, the children's removal from the home and involvement in foster care highlighted other significant needs or problems that were going unaddressed in the home. MCCSB acted properly in incorporating these needs into the reunification plan along with those that had been identified earlier. Moreover, it was far from "obvious" that the children would have benefitted from reunification. The children's therapists consistently testified that they needed structure, stability, and emotional support to treat their conditions. The trial court reasonably found that Mrs. Adams had not demonstrated any ability to satisfy those needs.
 {¶ 13} Mrs. Adams also argues that she is not responsible and should not be penalized for her husband's inability to hold a steady job. While this may be true, Mrs. Adams was responsible for demonstrating that she could provide for her family financially if the children were returned to her care. She failed to do so. She did not hold a job during any of the time that the children were not in her care, did not complete budgeting classes, and did not complete her GED. Thus, the trial court could have reasonably found that Adams had not adequately addressed the financial issues that had contributed to the housing problems necessitating removal of the children from her home in the first place.
 {¶ 14} Finally, Mrs. Adams claims that MCCSB essentially ran out the clock on the temporary custody of the children without helping the family toward reunification so that it could obtain permanent custody. The evidence does not support this claim. Rather, the evidence supports the trial court's finding that Mrs. Adams made very little effort to accomplish the goals of the case plan and that the effort she did make often happened only in response to the filing of a motion by MCCSB. In other words, there does not appear to have been any genuine and heartfelt effort on Mrs. Adams' part to do the things that she had to do to regain custody of her children. While MCCSB might have done more, it was not required to do so.
 {¶ 15} The trial court's judgment is not against the manifest weight of the evidence.
 {¶ 16} The first assignment of error is overruled.
 {¶ 17} "II. The trial court erred in allowing CASA/GAL to refuse discovery to the parties."
 {¶ 18} Mrs. Adams contends that she was unable to properly prepare for trial because she had not been allowed appropriate discovery and had not been allowed to cross-examine the guardian ad litem ("GAL").
 {¶ 19} The trial court addressed discovery issues in some detail. It reviewed two requests for discovery by Mrs. Adams and found that they were overly broad in that they went beyond the discovery allowed by Juv.R. 24. Thus, the court issued a limited protective order at the GAL's request. The court further held that, if Mrs. Adams uncovered any discrepancies between the GAL's report and information obtained from other sources, it would consider a limited discovery request at that time.
 {¶ 20} Mrs. Adams did not bring any discrepancies to the court's attention, make a limited discovery request, or call the GAL to testify on cross-examination. Moreover, she has not stated with any specificity in what way she claims to have been prejudiced by the scope of discovery allowed by the trial court. Under these circumstances, the trial court acted appropriately in confining discovery to those matters allowed by Juv.R. 24.
 {¶ 21} The second assignment of error is overruled.
 {¶ 22} The judgment of the trial court will be affirmed.
FAIN, P.J. and BROGAN, J., concur.
[1] The children's father, Rodney Adams, is married to Angela Adams and was involved in the children's lives during the times at issue in this appeal, but he has not appealed from the trial court's judgment.